UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

REGGIE BERNARD BURKS,

               Petitioner,                    Case No. 1:15-cv-1142

v.                                          Honorable Janet T. Neff

BONITA HOFFNER,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty in the Emmet County Circuit Court to two separate drug charges in two separate cases. In one case, Petitioner pleaded guilty to one count of delivery of heroin, MICH. COMP. LAWS § 333.7301(2)(a)(iv). In the other case, Petitioner pleaded guilty to one count of possession with intent to deliver less than 50 grams of morphine, MICH. COMP. LAWS § 333.7401(2)(a)(iv). On December 22, 2011, the trial court sentenced Petitioner as a second-offense felony offender, MICH. COMP. LAWS § 769.10, in the first case and as a third-offense felony offender, MICH. COMP. LAWS § 769.11, in the second case. The court then departed upward from the guidelines in both cases to impose two prison terms of 6 to 30 years, to run consecutively. In his *pro se* petition, Petitioner raises five grounds for relief, as follows:

    I.     WHETHER THE CIRCUIT COURT JUDGE ERRONEOUSLY IMPOSE[D] UPON [PETITIONER] AN UPWARD DEPARTURE TO SIX YEARS MINIMUM SENTENCE WITHOUT MAKING PROPER FINDINGS PURSUANT TO THE GARY SMITH CASE.

II.     WHETHER THE COURT ERRED IN REFUSING TO ALLOW [PETITIONER] TO WITHDRAW HIS PLEA BECAUSE HE DID NOT UNDERSTAND AND THE COURT DID NOT ADVISE HIM AT EITHER PLEA HEARING ARISING OUT OF THE SAME CASE THAT HE FAC[ED] CONSECUTIVE SENTENCING ON THE TWO CASES.

III.    [PETITIONER] WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

IV.     [PETITIONER] WAS DENIED HIS RIGHT TO SIXTH AND FOURTEENTH AMENDMENT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, WHERE TRIAL COUNSEL WAS ABSENT DURING A CRITICAL STAGE OF THE PLEA NEGOTIATIONS WITHOUT [PETITIONER] KNOWINGLY, INTELLIGENTLY, VOLUNTARILY UNDERSTANDING WAIVING HIS RIGHT TO HAVE COUNSEL PRESENT AT THIS CRITICAL STAGE.

V.      [PETITIONER] WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENT TO THE COMPETENT EFFECTIVE ASSISTANCE OF COUNSEL, AT THE TRIAL COURT LEVEL WHEN TRIAL COUNSEL . . . FAILED TO PERFORM AS THE ADVOCATE AND TEST THE SUBJECT THE PROSECUTOR[']S CASE TO MEANINGFUL ADVERSARIAL TESTING INCLUDING BUT NOT LIMIT[ED] TO: [FAILING TO INVESTIGATE CHARGES AND MOVE TO DISMISS SOME, FAILING TO INVESTIGATE BEFORE ADVISING PETITIONER TO PLEAD GUILTY, AND FAILING TO ADVISE PETITIONER ABOUT CONSECUTIVE SENTENCING].

(Pet., ECF No. 1, PageID.6-7, 9-10; Mot. for Relief from J., ECF No. 7-6, PageID..)  Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they are noncognizable, procedurally defaulted, and/or have no merit.  Upon review and applying the AEDPA standards, I find that the grounds are either noncognizable or without merit.  Accordingly, I recommend that the petition be denied.

**Procedural History**

**A.      Trial Court Proceedings**

The state prosecution arose from multiple controlled substance offenses arising out of two separate incidents that occurred in Emmet County.  In Case No. 11-3521-FH, Petitioner was charged in multiple counts for conduct that occurred on May 16, 2011:  two counts of delivery of less than 50 grams of a controlled substance (heroin), MICH. COMP. LAWS § 333.7401(2)(a)(iv); and one count of maintaining a drug house, MICH. COMP. LAWS § 333.7405(d).  The prosecutor also filed three notices for second-offense controlled substance, MICH. COMP. LAWS § 333.7413(2); and one notice of being a fourth-offense habitual offender, MICH. COMP. LAWS § 769.10.  In Case No. 11-3522, Petitioner was charged with nine criminal counts for conduct that occurred on August 23, 2011:  eight counts of possession with intent to deliver controlled substances (heroin, morphine, oxycodone, methadone, N-Benzylpiperazine, codeine, dihydrocodeine, and marijuana), MICH. COMP. LAWS § 333.7401(2), and one count of maintaining a drug house, MICH. COMP. LAWS § 333.7405(d), together with nine notices for second-offense controlled substance, MICH. COMP. LAWS § 333.7413(2), and a notice of being a fourth-offense habitual offender, MICH. COMP. LAWS § 769.12.

Petitioner, through counsel, negotiated plea agreements in the two cases.   In accordance with a written plea agreement signed October 6, 2011, Petitioner pleaded guilty in Case No. 11-3521-FH to one count of delivery of less than 50 grams of heroin and to being a second-offense felony offender, MICH. COMP. LAWS § 769.10, in exchange for dismissal of the other charges and dismissal of the second-offense controlled substance supplement and the notice of being a fourth-offense habitual offender.  (Plea Agreement I, ECF No. 9-3, PageID.526; Plea Hr'g Tr. I,

ECF No. 7-1, PageID.194-197.)  Petitioner admitted under oath that he delivered heroin to a confidential informant who was working with the police.  (Plea Hr'g Tr. I, PageID.194-195.)

On October 13, 2011, Petitioner signed a plea agreement and entered a guilty plea in Case No. 11-3522-FH, agreeing to plead guilty to possession with intent to deliver less than 50 grams of morphine and to being a third-offense habitual offender, in exchange for the dismissal of the other eight drug counts, all second-offense controlled substance supplements, and the notice of being a fourth-offense habitual offender.  (Plea Agreement I, ECF No. 9-4; PageID.528; Plea Hr'g Tr. I, ECF No. 7-2, PageID.203-207.)  Petitioner admitted to having 40 tablets of morphine concealed in the dashboard of his car and that he possessed it with the intention to sell it.  (Plea Hr'g Tr. II, ECF NO. 7-2, PageID.206.)

At a sentencing hearing held December 2, 2011, the court heard testimony from a series of police officers, Bethany Butters, and Jesse Green, in relation to Petitioner's objection to the scoring of Offense Variable (OV) 12, which related to whether Petitioner was in possession of the drugs found at 1431 North U.S. 31 in Petoskey.  (Sentencing Hr'g Tr. I, ECF No. 7-3, PageID.213-275.)  At a continued hearing held on December 22, 2011, a police officer, a parole officer and Petitioner  all testified about where Petitioner had been living before his arrest. (Sentencing Hr'g Tr. II, ECF No. 7-4, PageID.279-311.)  After hearing all of the testimony, the Court found that the probation department had properly scored OV 12 at 10 points, because the preponderance of the evidence showed that Petitioner possessed the drugs found at the house.  (*Id.*, PageID.320-322.)  The court then concluded that Petitioner should be sentenced above the guidelines range, to consecutive prison terms of 6 to 30 years' imprisonment in the two cases, both

of which were to run consecutively to the sentence for which he was on parole at the time of the offenses. (*Id.*, PageID.330-334.)

Petitioner, through appellate counsel filed a motion to set aside the guilty plea, asserting that Petitioner had not been advised prior to entering his plea that his sentences in the two cases could be imposed consecutively to one another. Petitioner argued that the trial court's failure to advise Petitioner violated MICH. CT. R. 6.302(B)(2), because it amounted to a failure to advise Petitioner of the maximum sentence he could face. (Mot. to Set Aside, ECF No. 1-1, PageID.16.) Petitioner also argued that counsel was ineffective in failing to advise him of the risk of consecutive sentences. (*Id.*, PageID.17.)

The trial court held an evidentiary hearing on the motion on April 16, 2012. (Hr'g on Mot. to Set Aside, ECF No. 7-5, PabeID.336-355.) At the hearing, trial counsel testified that she had advised Petitioner that the sentences could be consecutive on several occasions. First, she sent out mailings on September 14, 2011, and September 23, 2011, in which she included notices from the prosecuting attorney about the possibility of consecutive sentences. Both of those occasions preceded Petitioner's entry of his plea. She also discussed the possibility with Petitioner in person. Furthermore, counsel testified that she had discussed the possibility of consecutive sentences at the time Petitioner waived his preliminary hearing and was bound over to the circuit court. However, at that time, while Petitioner was notified on the record that the sentences would be consecutive to his parole sentence, it was not clear to either the prosecutor or the defense attorney whether the sentences would be consecutive to one another. Nevertheless, Petitioner was advised at that time that consecutive sentences were a possibility. (*Id.*, PageID.342-344.) Defense counsel also noted that she had notes from a telephone call with Petitioner that indicated that she had specifically

discussed the issue of consecutive sentencing. (*Id.*, PageID.347.) Petitioner testified that he had never seen the notices of consecutive sentencing. He stated that he did not remember ever discussing the possibility that the two sentences would be consecutive, only that they would be consecutive to the parole sentence. (*Id.*, PageID.350.)

The prosecutor noted that the plea agreements specifically stated that no agreement had been reached regarding sentencing. In addition, the prosecutor cited Michigan law to the effect that the court has no duty to advise a defendant that consecutive sentences may be imposed. (*Id.*, PageID.351-352.) Counsel for Petitioner argued that, because usually sentences for multiple offenses run concurrently in Michigan, the court should have been obligated to inform Petitioner of the possibility of a consecutive sentence. (*Id.*, PageID.353.) The court summarily denied the motion. (*Id.*, PageID.354.)

### B.    Direct Appeal

Petitioner sought leave to appeal to the Michigan Court of Appeals. His brief, which was filed by counsel on October 6, 1995, raised the first two issues presented in this habeas petition. (*See* Def.-Appellant's Br. on Appeal, ECF No. 7-9, PageID.404.) In an order issued on February 27, 2013, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. (*See* 2/27/13 Mich. Ct. App. Order, ECF No. 7-9, PageID.402.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same two issues presented to the Michigan Court of Appeals, together with the following issue:

3.    WHETHER THE COURT APPOINTED COUNSELOR EFFECTIVELY ASSISTED THE DEFENDANT DURING PLEA NEGOTIATIONS, AND PROPERLY ADVISED THE DEFENDANT OF THE MAXIMUM

SENTENCE, IF BOTH PARTIES AGREED TO THE PLEA
NEGOTIATION (AGREEMENT).

(Def.-Appellant's Appl. for Lv. to Appeal, ECF No. 7-10, PageID.436-438.) By order entered July

30, 2013, the Michigan Supreme Court denied his application for leave to appeal because it was not

persuaded that the questions presented should be reviewed. (*See* 7/30/13 Mich. Ord., ECF No. 7-10,

PageID.434.)

### C.    Post-conviction relief

Petitioner filed a motion for relief from judgment in the Emmet County Circuit Court

on January 20, 2014. In his motion, Petitioner raised the same three issues presented as Grounds

III, IV, and V of his habeas petition. (Def.-Appellant's Br. in Supp. of Mot. for Relief from J., ECF

No. 7-6, PageID.359, 361, 363, 385.) In an opinion and order issued on March 20, 2014, the trial

court denied the motion. (3/20/14 Cir. Ct. Op. & Order, ECF No. 7-8, PageID.397-401.)

Petitioner sought leave to appeal to both the Michigan Court of Appeals and the

Michigan Supreme Court. Those courts denied leave to appeal on September 19, 2014 and July 28,

2015, respectively. (9/19/14 Mich. Ct. App. Ord., ECF No. 7-11, PageID.448; 7/28/15 Mich. Ord.,

ECF No. 7-12, PageID.496.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given

effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA

has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th

Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas

petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

I.    Ground I:  Upward Departure to Guidelines Range

In his first ground for relief, Petitioner contends that the trial court erred in departing upward from the sentencing guidelines minimum-sentence range. Petitioner argues that, contrary to the trial court's findings, Petitioner's criminal history was not undervalued in the guidelines scoring. In fact, he contends, some of his Prior Record Variables (PRVs) were scored higher than they should have been, and the guidelines recommendation therefore, if anything, overvalued his criminal history.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines

establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it,

"found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner's sentences of 6 to 30 years on each of the drug convictions clearly are neither arbitrary nor shocking, as they fall well within the maximum sentences for the offenses. Further, Petitioner utterly fails to demonstrate that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court should have reached different conclusions based on the evidence before it. Such a claim clearly falls far short of the sort of egregious circumstances implicating due process. The state-court's rejection of Petitioner's claim therefore was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

II.    <u>Ground II: Refusal to Permit Petitioner to Withdraw the Plea</u>

In his second ground for relief, Petitioner argues that the trial court should have permitted him to withdraw the plea, because he did not understand and the court did not advise him that he faced consecutive sentencing on the two cases.

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed

in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

Nevertheless, Petitioner appears to argue that his plea was not knowing and voluntary because he did not understand that he faced possible consecutive sentencing in the two cases. The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark,* 984 F. 2d 203, 208 (7th Cir. 1993) (quoting *Alford*, 400 U.S. at 31) ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir.1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be

the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner argues that he did not understand that his sentences in the two cases could be imposed to run consecutively, rather than concurrently, and that the failure to advise him of this consequence amounted to a failure to give him notice of the consequences of his plea. The Supreme Court has never held that the possibility of consecutive sentencing is a consequence that must be

disclosed to render a sentence knowing and voluntary. In fact, the Sixth Circuit has held on multiple occasions that the Due Process Clause does not require a court to inform a defendant that his sentences will run consecutively. *See United States v. Gaskin*, 587 F. App'x 290, 291 (6th Cir. 2014) ("'[T]here is no requirement . . . that the court explicitly admonish a defendant that a sentence may be imposed consecutively.'") (quoting *United States v. Ospina*, 18 F.3d 1332, 1334 (6th Cir. 1994). *See also United States v. Green*, 608 F. App'x 383, 385 (6th Cir. 2015) (holding that a district court need not explicitly inform a defendant that sentences may run consecutively "to ensure that a defendant's plea is knowing an voluntary") (citing *Ospina*, 18 F.3d at 1334). Further, although the plea agreements in the instant case did not disclose the possibility of consecutive sentences, they "did not imply in any way that the sentences would run concurrently." *Gaskin*, 587 F. App'x at 298. Instead, they expressly recited that no sentencing agreement had been reached by the parties. (*See* Plea Agreement I, ECF No. 9-3, PageID.526; Plea Agreement II, ECF No. 9-4, PageID.528.)

As a result, even if Petitioner was not advised about the possibility of consecutive sentences prior to pleading guilty, he cannot demonstrate that his plea was not knowing or voluntary. The trial court's denial of Petitioner's motion to withdraw his plea therefore was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

Moreover, even assuming that Petitioner had a right to be informed about the possibility of consecutive sentences, the trial court specifically found that trial counsel had informed Petitioner of the possibility. At the hearing on the motion to set aside the guilty plea, trial counsel testified about the several occasions on which she had discussed with Petitioner the fact that the trial court had discretion to impose consecutive sentences in the two cases to which he was pleading

guilty. (*See* Hr'g on Mot. to Set Aside Plea, ECF No. 7-5, PageID.342-344.) While the court did not make explicit factual findings about counsel's credibility at that time, it summarily ruled against Petitioner on his motion. (Id., PageID.353-354.) Thereafter, in the opinion and order denying Petitioner's motion for relief from judgment, the trial court expressly stated that it had found trial counsel's testimony to be credible and had relied on counsel's testimony to deny the motion to withdraw the plea. (3/20/14 Op. & Order Denying Mot. for Relief from J., ECF No. 7-8, PageID.397-398, 400.)

The trial court's factual findings are entitled to a presumption of correctness, which Petitioner is required to rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner utterly fails to meet that standard. He simply argues that the court should have believed him, rather than his attorney. Upon review, the trial court's finding that counsel had advised Petitioner about the possibility of consecutive sentences is an entirely reasonable interpretation of the facts.

In sum, Petitioner had no constitutional right to be advised that his sentences might be ordered served consecutively to one another. The trial court also reasonably concluded that Petitioner had been informed of the possibility prior to the entry of his pleas. For both reasons, Petitioner is not entitled to habeas relief.

III.     Grounds IV and V: Ineffective Assistance of Trial Counsel

In his fourth ground for habeas relief, Petitioner contends that he was denied his right to the effective assistance of trial counsel when his attorney was absent during a critical stage of the plea negotiations to consult on the issue of consecutive sentencing. In his fifth ground for relief, Petitioner claims that his attorney was ineffective for failing to investigate the charges against

Petitioner and failing to move to dismiss some of those charges and failing to advise Petitioner about the possibility of consecutive sentences.

Ordinarily, claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus

17

is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner argues in Ground IV, however, that his challenge to the effectiveness of counsel should not be analyzed under the two-part test *Strickland*, because he was deprived of counsel during a critical stage of the proceeding when his attorney failed to meet with him to discuss the possibility of consecutive sentences. He argues, therefore, that the Court should review that claim under the standard of *United States v. Cronic*, 466 U.S. 648 (1984), rather than under *Strickland*.

In *Cronic*, the Supreme Court held that the denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. *Id.* Where a defendant has been deprived of counsel within the meaning of *Cronic*, the court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir. 2003).

In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court defined the differences between claims governed by *Strickland* and claims governed by *Cronic*. *See Henness v. Bagley*, 644 F.3d 308, 323-24 (6th Cir. 2011) (citing *Bell*, 535 U.S. at 695-96 (2002); *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007); *Mitchell*, 325 F.3d at 742). If a claim is governed by *Strickland*, a

defendant must typically demonstrate that specific errors made by trial counsel affected the ability of the defendant to receive a fair trial (or caused him to plead guilty). If a claim is governed by *Cronic*, on the other hand, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. *Mitchell*, 325 F.3d at 742 (citing *Bell*, 535 U.S. at 695); *see Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1378 (2015) ("*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" (quoting *Cronic*, 466 U.S. at 658). Three types of cases warrant the presumption of prejudice: (1) when the accused is denied the presence of counsel at a critical stage; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance. *Henness*, 644 F.3d at 323-324 (citing *Bell*, 535 U.S. at 695-96)); *see also Ivory*, 509 F.3d at 294; *Mitchell*, 325 F.3d at 742.

      None of those circumstances apply here. First, Petitioner does not even suggest that counsel was placed in circumstances that likely prevented her from providing assistance. Second, Petitioner does not allege and cannot demonstrate that counsel was absent from the plea-negotiation process or any other proceeding. Third, Petitioner fails to show that counsel's performance was so minimal during negotiations that she was effectively absent. In fact, the record makes clear that counsel advocated diligently during the plea negotiations. The plea she negotiated resulted in the dismissal of nine serious charges, as well as the second-drug-offense supplements, which could have doubled Petitioner's sentence for any drug conviction. MICH. COMP. LAWS § 333.7413(2). In addition, the fourth-offense habitual offender supplements were reduced to second- and third-offense habitual offender supplements, which, absent the reduction, could also have significantly increased

Petitioner's sentence. *See* MICH. COMP. LAWS § 769.12. In light of the plea agreements reached in the two cases, no facts exist on which a court could conclude that trial counsel was effectively absent from the plea negotiation process.

As a result, Petitioner's claim that trial counsel failed to advise him about the possibility of consecutive sentencing is not appropriately considered under *Cronic*, 466 U.S. 648, but instead must be analyzed under the two-part standard of *Strickland*, 466 U.S. at 689.

Under *Strickland*, Petitioner's claim fares no better. As previously discussed and contrary to Petitioner's claims, the trial court found that counsel had not erred as Petitioner alleges. Instead, the court found, counsel advised Petitioner more than once about the possibility of consecutive sentencing. As the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102). Here, the trial court's determination that counsel had effectively counseled Petitioner was not only plausible, but entirely reasonable.

Further, even if counsel had not advised Petitioner of the possibility of consecutive sentencing, Petitioner could not demonstrate ineffective assistance. As the Court earlier discussed,

Petitioner had no constitutional right to be advised of the possibility of consecutive sentencing. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore*, 708 F.3d at 776.

Finally, Plaintiff's remaining argument – that his attorney was ineffective in failing to investigate the many charges that were dismissed in exchange for his plea and in failing to move to dismiss some of those charges – also fails. Claims about an attorney's failures that occurred before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001). Petitioner's claims about his attorney's failures to investigate the dismissed charges and to seek dismissal of those charges prior to negotiating a plea do not attack the voluntary or intelligent nature of his plea. His claims therefore have been waived by his subsequent guilty plea. *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

In sum, Petitioner fails to demonstrate ineffective assistance of trial counsel. Grounds IV and V of the petition therefore should be denied.

IV.    Ground III:  Ineffective Assistance of Appellate Counsel

Petitioner contends that appellate counsel was ineffective for failing to raise on appeal Petitioner's challenges to the effective assistance of trial counsel.  Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).  As fully discussed in the preceding section, Petitioner fails to demonstrate that trial counsel rendered ineffective assistance of counsel.  His claim of ineffective assistance of appellate counsel therefore fails as well.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Date:  May 18, 2017                        /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).